```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
DAVID WILLIAM BOYD,

                        Plaintiff,
         -vs-                                No. 6:15-CV-06667 (MAT)
                                             DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.
```
___

## I.  Introduction

Represented by counsel, David William Boyd ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II.  Procedural History

The record reveals that in November 2012, plaintiff (d/o/b February 21, 1965) applied for DIB, alleging disability beginning July 15, 2010. After his application was denied, plaintiff requested a hearing, which was held, via videoconference, before

administrative law judge Joseph L. Brinkley ("the ALJ") on June 17, 2014. The ALJ issued an unfavorable decision on June 27, 2014. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Evidence**

The record reveals that plaintiff suffered a work-related back injury in 2008. He also underwent surgery on his right wrist, including a right proximal carpectomy, in June 2000 and suffered a work-related right wrist sprain in May 2005. Plaintiff began treating for back pain with Dr. Clifford Ameduri in January 2009. In March 2009, Dr. Ameduri opined in a letter (apparently completed for worker's compensation purposes) that plaintiff should avoid repetitive bending and twisting, should not climb ladders or lift more than 20 pounds, and may stand for one hour before needing to sit down.

Plaintiff continued to treat with Dr. Ameduri during the relevant time period. Physical examinations consistently revealed positive straight leg raise ("SLR") tests, positive Minor's sign,[1] antalgic gait, limited and slow range of motion ("ROM") of the lower back, and tenderness to palpation in the lower back. An MRI conducted in August 2012 revealed facet hypertrophy and mild central canal narrowing at L3-L4. Dr. Ameduri prescribed narcotic

---

[1] A positive Minor's sign is present when a patient, rising from a sitting to a standing position, uses the arms and unaffected lower extremity to support body weight or uses hands to "walk up" the legs.

medications for plaintiff's pain, as well as intermittent use of a TENS unit, home exercises, and physical therapy. In September 2013, plaintiff reported to Dr. Ameduri that he was unable to continue with physical therapy due to pain, and Dr. Ameduri continued plaintiff's Vicodin prescription and recommended home stretching and heat for pain management.

Dr. Ameduri completed three medical source statements. On August 1, 2012, Dr. Ameduri opined that plaintiff could occasionally lift and carry up to 10 pounds and never carry more than 10 pounds; plaintiff could sit for up to 30 minutes at a time and up to four hours in an eight-hour workday; plaintiff could occasionally reach, push, and pull, and frequently hand, finger, and feel; and plaintiff could occasionally climb stairs and ramps but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. Dr. Ameduri opined that plaintiff's pain interfered with concentration, persistence, or pace, would likely interfere with social relationships at work, and plaintiff would have "good" and "bad" days due to pain. Dr. Ameduri opined that plaintiff's symptoms would cause him to miss at least two full workdays per month.

On December 17, 2012, Dr. Ameduri opined that plaintiff could occasionally (up to one-third of the workday) lift and carry up to 10 pounds; plaintiff was limited to standing and/or walking for less than two hours per day; and plaintiff could sit less than six

hours per day. On March 21, 2014, Dr. Ameduri gave an opinion that was substantially similar to his previous opinions.

On September 13, 2012, Dr. Steven Hausmann completed an independent medical examination ("IME") of plaintiff for worker's compensation purposes. On physical examination, plaintiff exhibited limited ROM of the lumbar spine and positive SLR bilaterally. Dr. Hausmann opined that plaintiff's "MRI findings [were] consistent with age-related degenerative processes and not due to any traumatic injury" and that "[h]is pain appear[ed] to be disproportionate to the anatomic findings." T. 282. Nevertheless, Dr. Hausmann opined that his "back pain [was] clearly documented to have arisen from the claimed occupational exposure so there would be a causal relationship in that respect." Id. Dr. Hausmann recommended that plaintiff continue with home exercises, which did "not require any physical or physical therapy supervision." Id.

Dr. Harbinder Toor completed a consulting internal medicine examination, at the request of the state agency, on January 30, 2013. On physical examination, Dr. Toor noted that plaintiff appeared to be in "moderate pain" with an abnormal gait ("limping toward left side"). T. 332. Plaintiff declined heel-toe walking, squat, and laying down on the examination table. Dr. Toor noted that plaintiff had "difficulty changing for exam" and "difficulty getting out of [the] chair." Id. Plaintiff's lumbar spine ROM was limited to 20 degrees forward flexion, zero degrees extension, 20 degrees lateral flexion, and 20 degrees rotary movement.

4

Plaintiff declined to take an SLR test. An X-ray of plaintiff's lumbar spine was negative for abnormalities.

Dr. Toor opined that plaintiff had "moderate to severe limitations with standing, walking, squatting, bending, and lifting"; pain interfered with his balance; he was moderately limited in "sitting for a long time" and "pushing, pulling, reaching, grasping, holding, writing, tying shoelaces, zipping the zipper, buttoning the button, manipulating the coin, or holding an object with the right arm, right shoulder, and right hand"; plaintiff was mildly limited in hearing in the right ear; and he "should avoid irritants or other factors which can precipitate his asthma." T. 335.

### IV.  ALJ's Decision

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2013. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date, July 15, 2010. At step two, the ALJ found that plaintiff suffered from the following severe impairments: mild canal narrowing at L3-4, chronic back pain, right shoulder degenerative joint disease, and status post right wrist surgery. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), "except that [he]: can frequently use his hands; can occasionally climb ramps/stairs, balance, stoop, kneel, and reach overhead bilaterally; can never climb ladders/ropes/scaffolds, crouch, or crawl; must avoid concentrated exposure to hazards including dangerous machinery and unprotected heights; can sit, stand, and walk one hour each without interruptions, then he would need to alternate postural positions for 20 minutes before returning to the position that was held immediately prior; can sit for a total of 6 hours in an 8-hour workday, and can stand/walk combined for a total of 4 hours in an 8-hour workday, with interruptions and regularly scheduled breaks." T. 14.

At step four, the ALJ found that plaintiff could not perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**V.  Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also

Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ's RFC assessment is unsupported by substantial evidence, arguing that the ALJ failed to properly weigh the medical opinions of record and that no medical opinion provided substantial support for the ALJ's ultimate RFC finding. In formulating plaintiff's RFC, the ALJ gave "little" weight to Dr. Ameduri's August 1, 2012 opinion, because plaintiff had a "large gap in . . . treatment from July 2011 to August 1, 2012"; plaintiff's complaints were "subjective in nature"; and because the ALJ found the opinion inconsistent with Dr. Hausmann's September 13, 2012 IME. The ALJ did not explicitly state what weight he gave to Dr. Hausman's IME opinion, but he gave little weight to Dr. Ameduri's December 17, 2012 opinion because the "less-than-sedentary exertional restrictions [were] not medically substantiated by either imagining or clinical findings and [were] inconsistent with Dr. Hausmann's findings." T. 17. The ALJ similarly gave little weight to Dr. Toor's consulting opinion, finding that "clinical and imaging evidence did not support [the] level of limitation" opined by Dr. Toor; X-ray was normal; and because it was "apparent that the claimant failed to cooprate with the full exam, refusing to comply with squatting, laying down on the exam table, hip movement, and straight leg raising." Id.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

In considering a treating physician's opinion, an ALJ is required to consult the factors listed in 20 C.F.R. § 404.1527, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran, 362 F.3d at 32. Plaintiff argues that the ALJ in this case failed to apply the appropriate factors and failed to give "good reasons" as he was required to do before rejecting Dr. Ameduri's opinions. See Coluciello-Pitkouvich v. Astrue, 2014 WL 4954664, *6 (E.D.N.Y. Sept. 30, 2014) ("[T]he ALJ

8

must expressly state the weight assigned and provide 'good reasons' for why the particular weight was assigned to each treating source's opinion.") (citing 20 C.F.R. § 404.1527(c)(2)).

The Court agrees with plaintiff that the ALJ failed to provide good reasons for rejecting Dr. Ameduri's opinions and instead apparently giving greater weight to the opinion of one-time examiner Dr. Hausmann, who examined plaintiff for worker's compensation purposes. Although the ALJ stated repeatedly that he found Dr. Ameduri's restrictive limitations to be inconsistent with objective medical findings, the ALJ's decision fails to acknowledge the length of Dr. Ameduri's treatment relationship with plaintiff and fails to take account of Dr. Ameduri's repeated clinical findings of positive Minor's sign, positive SLR tests, antalgic gait, and limited ROM in plaintiff's lumbar spine. The ALJ's decision reflects that he did not fully consider the extent to which Dr. Ameduri's opinions were supported by medically acceptable clinical and diagnostic techniques and their consistency with the medical record as a whole, including Dr. Toor's consulting opinion.

Because it is not clear from the ALJ's decision whether and to what extent he considered the applicable factors in reviewing Dr. Ameduri's decision, it appears that the ALJ failed to properly apply the "substance" of the treating physician rule and the ALJ's failure to discuss the factors cannot be considered harmless error. See Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013).

9

It also appears from the ALJ's decision that rather than fully considering plaintiff's medical record, the ALJ instead picked and chose evidence which would support a finding of disability, while ignoring evidence that would support the limitations found by plaintiff's treating physical and by the state agency consulting physician. See Ebelink v. Colvin, 2015 WL 9581787, *6 (W.D.N.Y. Dec. 30, 2015) ("While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion.") (quoting Royal v. Astrue, 2012 WL 5449610, *6 (N.D.N.Y. Oct. 2, 2012)). In this regard, the Court finds it significant that the ALJ elected to give little weight to the restrictive findings of Dr. Toor's consulting examination and largely ignored the objective findings of that examination (which included limited ROM of the lumbar spine). The ALJ also discounted Dr. Toor's notations that plaintiff appeared to be in pain and demonstrated difficulty undressing and rising from his chair, notations which may have been relevant to plaintiff's refusal to perform certain physical tests.

The case is thus reversed and remanded for further proceedings. See Alexander v. Comm'r of Soc. Sec., 2014 WL 7392112, at *5 (D. Vt. Dec. 29, 2014) ("An ALJ's failure to consider the relevant regulatory factors in weighing a treating physician's opinion is ordinarily grounds for remand.") (citing Halloran, 362 F.3d at 33). On remand, the ALJ is instructed to consider the factors listed in 20 C.F.R. § 404.1527 when evaluating

Dr. Ameduri's opinions and to state the weight he gives to each of Dr. Ameduri's opinion as well as the weight given to Dr. Toor's and Dr. Hausmann's opinions. The ALJ is reminded that he must give good reasons before rejecting Dr. Ameduri's opinions. Additionally, on remand, the ALJ is directed to obtain VE testimony consistent with the RFC he finds after properly applying weighing the medical opinions of record.

## VI. Conclusion

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 11) is denied and plaintiff's motion (Doc. 9) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    December 8, 2016
            Rochester, New York.